UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YATES INDUSTRIES SOUTH, LLC,               Case No. 25-10339

     Plaintiff,                                F. Kay Behm
v.                                         United States District Judge

EDISON CHOUEST OFFSHORE, INC, *et
al.*,

     Defendants.
_____ /

**OPINION AND ORDER ON DEFENDANTS'
<u>MOTION TO DISMISS (ECF No. 25)</u>**

## I.    PROCEDURAL HISTORY

Plaintiff, Yates Industries South, LLC (Yates South) filed this breach of

contract complaint against Defendants on February 5, 2025.  (ECF No. 1).  Plaintiff

filed an amended complaint on May 20, 2025 (FAC).  (ECF No. 15).  On June 18,

2025, Defendants filed a motion to dismiss the FAC based on lack of personal

jurisdiction.  (ECF No. 25).  This matter is fully briefed.  (ECF Nos. 28, 30).  The

court held a hearing on September 24, 2025.

For the reasons set forth below, the motion to dismiss based on lack of

personal jurisdiction is **GRANTED**.

## II.    FACTUAL BACKGROUND

Yates South is apparently a Michigan corporation with its headquarters located in Michigan; however its relevant facility is located in Mobile, Alabama. Further, its parent company, Yates Industrial, is located in Michigan. Yates South has sued Edison Chouest Offshore, Inc., Edison Chouest Offshore LLC, Offshore Services Vessels, LLC, Island Ventures 6, LLC, LaShip, LLC, and G-Boats, Inc. based on allegedly unpaid invoices. Those invoices were billed to G-Boats/LaShip at their Louisiana address. (ECF No. 15, Exs. A-C, PageID.163-170). The corresponding purchase orders were issued by Island Ventures 6, LLC on "Edison Chouest Offshore" letterhead and sent to Yates Industrial in Michigan. (ECF No. 15, PageID.183-185).

According to Defendants, "Edison Chouest Offshore" (ECO) is not an entity, but is instead a tradename associated with several separate entities who have an organizational affiliation with various business purposes. (ECF No. 25-2, Declaration of Brian J. Engeron, ¶¶ 5-6). Offshore Service Vessels, LLC (OSV) is an ECO-affiliated company. *Id.* at ¶ 6. OSV is a Louisiana LLC with its sole place of business located in Cut Off, Louisiana. *Id.* at ¶ 3. OSV is primarily engaged in the ownership and commercial operation of certain offshore vessels. *Id*. at ¶ 7. Edison Chouest Offshore, LLC, is a prior name of OSV, and is not a separately

existing entity.  *Id*. at ¶ 4.  Edison Chouest Offshore, Inc. has not existed as a

corporate entity since 1996.  It was previously incorporated and had its principal

place of business in Cut Off, Louisiana.  *Id*. at ¶ 5.  Island Ventures 6, LLC (Island

Ventures) is a separate ECO-affiliated company.  *Id*. at ¶ 10.  Island Ventures is a

Louisiana limited liability company with its sole place of business in Cut Off,

Louisiana.  *Id*.  Island Ventures owns and operates an offshore vessel known as

the "M/V Island Performer" (the Vessel).  *Id*.  LaShip, LLC (LaShip) is a separate

ECO-affiliated company.  *Id*. at ¶ 11.  LaShip is a Louisiana limited liability

company with its registered address in Cut Off, Louisiana and shipyard operations

in Houma, Louisiana.  *Id*.  LaShip's principal business concerns operating a

shipyard.  *Id*.  G-Boats, Inc. (G-Boats) is another separate ECO-affiliated company,

incorporated and having its principal place of business in Guyana.  *Id*. at ¶ 12.  G-

Boat's business involves vessel operations in Guyana.  *Id*.  Defendants maintain

that neither LaShip nor G-Boats owns or operates the Vessel nor contracted with

Plaintiff regarding the relevant repair work to the Vessel.  *Id*. at ¶¶ 11-12.

According to Defendants, neither Island Ventures nor the other Defendants

have offices, employees, or agents in Michigan.  *Id*. at ¶ 19.  None of the

Defendants own bank accounts, real estate, or other property in Michigan.  *Id*. at

¶ 20.  And none carry out a continuous and systematic part of their general business in Michigan.  *Id*. at ¶ 21.

Plaintiff performed certain repairs to components of a crane system on the Vessel pursuant to purchase orders submitted by Island Ventures in May 2024. (ECF No. 15, Ex. F to FAC, PageID.183-185).  According to Defendants, none of the other Defendants contracted with Plaintiff for the repair work.  *Id*.; *see also* ECF No. 25-2, ¶¶ 9, 11-12.  Defendants maintain that no ECO-affiliated company personnel dealt with any personnel of Plaintiff in Michigan in connection with the request for the repairs.  (ECF No. 25-2, ¶ 13).  Rather, they contend that Island Ventures' representatives communicated with Chris Buss, a Regional Sales Manager for Plaintiff who is located in the Mobile, Alabama metropolitan area and who has a phone number with an Alabama area code, and personnel at Yates' Decatur, Alabama location, including Deana Harris and Doug Helfrich, in connection with the request for the repairs.  *Id*. ¶ 14.  Island Ventures submitted purchase orders to Plaintiff for this repair work.  (ECF No. 15, Ex. F to FAC, PageID.183-185).  According to Defendants, those purchase orders contain the "Edison Chouest Offshore" tradename logo, but were issued by Island Ventures, and also list the Vessel under the "ship to" address and Island Ventures under the

"bill to" address.  *Id*.  None of the other Defendants are referenced in the purchase orders.  *Id*.

Although invoices and sales orders that Plaintiff attach to the FAC have references to the "Edison Chouest Offshore" tradename, they all reference the Vessel owned by Island Ventures.  (ECF No. 15, Exs. A-C & F to FAC, PageID.163-170, 183-185).  Defendants also point out that these invoices and sales orders all originate from Plaintiff's Decatur, Alabama location—not Michigan.  *Id*.  According to Plaintiff, while the first invoice was paid, the remaining three invoices remain outstanding, necessitating this lawsuit.

Island Ventures transported the items that Plaintiff worked on to and from Plaintiff's Decatur, Alabama location for servicing.  (ECF No. 25-2, ¶ 15).  The items did not originate from Michigan, were not serviced in Michigan, and were not delivered or installed in Michigan.  *Id*. at ¶¶ 15-16.  The items originated in Tampa, Florida, where the Vessel was located at the time the items were removed for servicing, and were reinstalled on the Vessel in Port Fourchon, Louisiana once the work was complete.  *Id*. at ¶ 16.  None of the contemplated work was performed in Michigan.  *Id*. at ¶ 17.  No personnel of any of the ECO-affiliated companies travelled to Michigan in connection with the relevant transaction.  *Id*. at ¶ 18.

5

## III.    ANALYSIS

### A.    <u>Standard of Review</u>

Fed. R. Civ. P. 12(b)(2) allows a defendant to move for dismissal of a case for lack of personal jurisdiction.  When considering a motion under Rule 12(b)(2), the court may: (1) decide the motion upon the affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).  Regardless of which method the court chooses, the plaintiff bears the burden of establishing that the court can exercise personal jurisdiction over the defendant.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  The weight of this burden, however, depends on whether the court decides to rule on the parties' written submissions alone or to hear evidence.  *Id.*  Where, as here, the court decides a motion without an evidentiary hearing, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.  *Anwar v. Dow Chem. Co.*, 867 F.3d 841, 847 (6th Cir. 2017).  This burden is considered to be "relatively slight."  *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 116 (6th Cir. 1988)).  The pleadings and affidavits must be viewed in the light most favorable to the plaintiff, and the

court should not weigh any contrary assertions offered by the defendant.

*AlixPartners, LLP v. Brewington,* 133 F. Supp. 3d 947, 954 (E.D. Mich. 2015) (citing

*Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005)).

      B.    <u>General Personal Jurisdiction</u>

      Federal courts may exercise personal jurisdiction in a diversity case if such

jurisdiction is authorized by the law of the state in which the court sits and is

otherwise consistent with the Due Process Clause of the Fourteenth Amendment.

*Neogen*, 282 F.3d at 888.  Michigan's long-arm statute provides for both "general"

jurisdiction over corporations, pursuant to Mich. Comp. Laws § 600.711, and

"limited" jurisdiction over corporations, pursuant to Mich. Comp. Laws § 600.715.

A court has general jurisdiction over a corporation if it is incorporated in

Michigan, consents to jurisdiction pursuant to Mich. Comp. Laws § 600.745, or

carries on a "continuous and systematic part of its general business" in Michigan.

Mich. Comp. Laws § 600.711.  General personal jurisdiction allows a court to

exercise jurisdiction over a corporation regardless of whether the claim at issue is

related to its activities in the state or has an in-state effect.  *Id.*; *see also*

*AlixPartners*, 133 F. Supp. 3d at 955.

      Michigan courts require foreign corporations to "actually be present within

the forum state on a regular basis, either personally or through an independent

agent." *Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 707 (2014).  In making

this determination, Michigan courts consider "whether the particular corporate

entity has a physical location, officers, employees, or bank accounts in Michigan,"

and the corporation's "conduct in soliciting and procuring sales and purchases

within Michigan." *Id*. at 707.  The "mere suggestion" that a defendant

corporation "is, in some manner, conjoined with various subsidiaries that operate

in Michigan is not sufficient to establish general personal jurisdiction." *Id.* at 710

(citing *Avery v. American Honda Motor Car Co*., 120 Mich. App. 222, 225 (1982)).

Plaintiff must instead "plead or demonstrate an adequate 'alter ego' relationship

between" a defendant corporation "and its subsidiaries or that" a defendant

corporation had control over the subsidiaries.  *Id*. at 711.

Setting aside the parties' arguments on alter ego and whether Defendants

limited contacts with Michigan constitute the transaction of business in Michigan,

the court finds that the contacts identified are too isolated and attenuated to

constitute any of Defendants carrying on a "continuous and systematic part of its

general business" in Michigan.  More specifically, Plaintiff points to purported

evidence of an ongoing business relationship with Yates South's parent company,

Yates Industries, in Michigan.  These contacts are, however, quite limited.

Plaintiff first point to Exhibit G to the First Amended Complaint.  Exhibit G is a

8

purchase order that Offshore Service Vessels sent to Yates Industries at its

Michigan address on February 4, 2021.  (ECF No. 15, PageID.193-194).  Plaintiff

also points to two purchase orders that Island Ventures sent to Yates Industries at

its Michigan address in May 2024.  (ECF No. 15, PageID.183-184).  Finally, Plaintiff

cites Exhibit L to the FAC, which is a July 10, 2024 letter from Defendants' counsel

to Yates South and Yates Industrial (at its Michigan address) regarding the alleged

failure of certain overhaul services that Yates performed on a piston accumulator

for a crane on the vessel, Island Performer.  (ECF No. 15, PageID.221-222).  These

are the sum total of the contacts any of Defendants had with Yates Industries in

Michigan.

The court finds these contacts insufficient as they do not constitute a

"continuous and systematic part of [Defendants'] general business."  Instead, the

court finds these contacts to be isolated and attenuated.  This case is similar to

*Salom Enters., LLC v. TS Trim Indus., Inc.*, 464 F. Supp. 2d 676, 682 (E.D. Mich.

2006), where the court found the allegations in the complaint did not show that

the defendant carried on continuous and systematic business in the state of

Michigan.  There, the complaint alleged that the defendant conducted business

with a leather supplier located in Michigan for the raw materials the plaintiff used

to make leather armrests at its Mexico plant and guaranteed the plaintiff's

9

account to the supplier.  The plaintiff also alleged that the defendant negotiated

with the plaintiff's representatives in Michigan for the asset and inventory

purchase.  *Id.*  The court found these contacts to be "isolated and occasional." *Id.*

Further, the court noted that there were no allegations that the defendant was

physically present in the state, retained agents to represent it here, solicited sales

or other business here on a regular basis, or derived any substantial revenue from

business conducted in the state.  *Id.*  The same is true here.  Indeed, the contacts

here more even more attenuated than those analyzed in *Salom*.  Sending three

purchase orders to Yates Industries in Michigan over the course of four years

along with a letter outlining a dispute are "isolated and occasional" contacts,

insufficient to establish "continuous and systematic part of its general business."

Accordingly, the court concludes that it does not have general personal

jurisdiction over Defendants under § 600.711.

     C.   <u>Limited Personal Jurisdiction</u>

     Mich. Comp. Laws § 600.715 allows a court to exercise limited personal

jurisdiction over a corporation and render personal judgments over such

corporation arising out of the act or acts which create any of the following

relationships:

          (1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715.  The "transaction of any business" under Mich. Comp. Laws § 600.715(1) is established by "even the slightest act of business" in Michigan.  *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988). The Michigan Supreme Court has construed Michigan's limited jurisdiction statute to "extend[] the state's jurisdiction to the farthest limits permitted by due process."  *Sifers v. Horen*, 188 N.W.2d 623, 623-24 (Mich. 1971).  The Sixth Circuit has held that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)).  Traditionally, the Due Process Clause requires a defendant to have sufficient "minimum contacts" with the forum state such that "it is fair to subject them to jurisdiction."  *Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012) (citing

11

*Burger King Corp v. Rudzewicz,* 471 U.S. 462, 475 (1985)).  The Sixth Circuit has

established a three-part test, often referred to as the "*Southern Machine* test" to

determine whether specific jurisdiction exists over a nonresident defendant:

> First, the defendant must purposefully avail himself of
> the privilege of conducting activities within the forum
> state; second, the cause of action must arise from the
> defendant's activities there; and third, the acts of the
> defendant or consequences caused by the defendant
> must have a substantial enough connection with the
> forum state to make its exercise of jurisdiction over the
> defendant fundamentally fair.

*Neogen*, 282 F.3d at 890 (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374,

381 (6th Cir. 1968)).  While this test creates a framework for courts to evaluate

personal jurisdiction claims, it must not be applied formulaically, and "'the facts

of each case must [always] be weighed' in determining whether personal

jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King*

*Corp.*, 471 U.S. at 486 (citing *Kulko v. California Superior Court,* 436 U.S. 84, 92

(1978)).

### 1.  Purposeful Availment

The Sixth Circuit views the purposeful availment requirement as "essential"

to a finding of personal jurisdiction.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718,

722 (6th Cir. 2000).  This requirement ensures that a defendant "will not be haled

into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts … or of the 'unilateral activity of another party or a third person.'"

*Burger King Corp.*, 471 U.S. at 475 (citing *Helicopteros Nacionales de Colombia,*

*S.A. v. Hall*, 466 U.S. 408, 417 (1984)).  To find purposeful availment, courts must

look to whether a defendant has deliberately engaged in significant activities

within a state or has created continuing obligations between himself and

residents of the forum, such that he has "availed himself of the privilege of

conducting business there and … it is not unreasonable to require him to submit

to the burdens of litigation in that forum."  *Id.* at 475-76.  Courts may also

consider whether a choice of law provision is included in the underlying

agreement or contract.  *Burger King Corp.*, 471 U.S. at 482.  While a choice of law

provision alone is insufficient to confer personal jurisdiction, it may be one factor

in the court's analysis.  *Id.*  ("Nothing in our cases … suggests that a choice-of-law

provision should be ignored in considering when a defendant has 'purposefully

invoked the benefits and protections of a State's laws.'").

Plaintiff argues that purposeful availment is satisfied because Defendants

formed a business relationship with Yates and Yates South and agreed that

relationship was government by Michigan law.  (ECF No. 15, PageID.181).

Defendants argue that Plaintiff cannot demonstrate that Defendants deliberately

engaged in significant activities in Michigan or created continuing obligations

between itself and the residents of Michigan.  *See Lanier*, *v. Am. Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988).

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) is instructive. in *Calphalon*, the Sixth Circuit held that the defendants did not purposefully avail themselves of the privilege of acting in Ohio where: the defendants, who were citizens of Minnesota, entered into a contract with an Ohio plaintiff; the agreement contained an Ohio choice-of-law provision; the defendants had duties to monitor market conditions and report to the plaintiff in Ohio; the defendants had telephone and fax contacts with the plaintiff in Ohio; the defendants visited the plaintiff's office in Ohio; and the defendants threatened litigation.  The contract centered on the defendants acting as a sales representative for the plaintiff in the states of Minnesota, Iowa, South Dakota, North Dakota, and Nebraska—it "was not focused on exploiting any market for cookware in the state of Ohio."  *Calphalon*, 228 F.3d 718 at 723.  Moreover, the defendants' phone, mail, and fax contact with the plaintiff in Ohio and physical visits there "occurred solely because [the plaintiff] chose to be headquartered in Ohio, not because [defendants] sought to further its business and create 'continuous and substantial' consequences there." *Id*.

14

As discussed above in relation to general jurisdiction, Defendants' contacts with Michigan are limited to sending three purchase orders to Yates Industries in Michigan over the course of four years along with a letter outlining a dispute.[1] Like the facts in *Calphalon*, these actions did not create "continuous and substantial consequences" in the state of Michigan, even when taking into considering the choice of law provision.  As *Burger King* teaches, only where a defendant "deliberately" had engaged in significant activities within a state or has created "continuing obligations" between himself and residents of the forum, has he availed himself of the privilege of conducting business there.  *Id*. at 475-476. Defendants have done neither here.  The court finds the sending of purchase orders for two separate transactions for repair work in 2021 and 2024, along with payments made on those invoices, are not "significant activities" within the State of Michigan.  And these purchase orders and payments did not create an ongoing relationship.  Rather, they appear to be "one and done" transactions.  Further, there is no evidence that with respect to the purchase orders sent to Yates Industrial that Defendants dealt with any personnel located in Michigan as it pertains to performance of the contracted services.  In fact, with respect to the

---

[1] Plaintiff does assert that historically, payments from Defendants were made to its Michigan facility.  (ECF No. 15, PageID.231, Declaration of William Yates III).

2021 purchase order, Defendants' employee Helge Kleven emailed with Chris

Buss, who is located in Alabama.  (ECF No. 15, PageID.195-197).  Moreover, the

sales order forms issued in response to the purchase orders were issued by Yates

South in Alabama, not Yates Industrial in Michigan.  (ECF No. 15, PageID.186-191).

This case is similar to *Kerry Steel, Inc. v. Paragon Industries*, 106 F.3d 147,

151 (6th Cir. 1997) in which the court found the existence of a contract with a

Michigan corporation insufficient to establish minimum contacts with the State.

Additionally, neither the subject matter nor the performance of the contract

related to Michigan.  *Id*.  Here, neither the subject matter nor the performance of

the contract occurred in Michigan; instead, the repairs were performed in

Alabama.  This further shows that any connection with Michigan was attenuated

at best.  Accordingly, the court finds that that Defendants did not purposely avail

themselves of the privilege of doing business in Michigan.

Plaintiff's reliance on *Sullivan v. LG Chem., Ltd.*, 79 F.4th 651 (6th Cir. 2023)

does not alter this analysis.  There, the defendant was party to a contract under

which it agreed to ship thousands of units of product into Michigan and the

contract had specific language stating it was to be performed in the state of

Michigan.  *Id*. at 671.  The contract also contained a Michigan forum selection

clause.  *Id*.  The court held that "[e]ntering into contracts in the forum state

16

subject to the forum-state's laws that create an ongoing relationship, alongside

placing one's products directly into the forum state, can satisfy purposeful

availment." *Id*.  In contrast, here there is no ongoing relationship created by the

parties' agreements, no products or property of Defendants ever entered the

state of Michigan, and the contract was not performed in Michigan.  Further, the

contract here, unlike that in *Sullivan*, contains a choice of law provision, not a

forum selection clause.  Thus, the court finds *Sullivan* inapposite to the facts at

hand.

      2.  *"Arising From"*

    Even if Plaintiff could satisfy the purposeful availment prong, the court

finds that the harm that forms the basis of Plaintiff's lawsuit is not directly related

to nor "arises from" Defendants' transaction of business in Michigan.

*AlixPartners*, 133 F. Supp. 3d at 959.  The key requirement is that "the cause of

action, of whatever type, have a substantial connection with the defendant's in-

state activities."  *S. Mach. Co.,* 401 F.2d at 384.  "Only when the operative facts of

the controversy are not related to the defendant's conduct with the state can it

be said that the cause of action does not arise from that contract."  *S. Mach. Co.*,

401 F.2d at 384 n. 29.  Plaintiff's claim is based on the alleged failure of

Defendants to pay for repair work that occurred at its Alabama facility.  In *Kerry*

*Steel, Inc. v. Paragon Industries*, 106 F.3d 147, 152 (6th Cir. 1997), the court found the "arising from" requirement was not satisfied because defendant's alleged breach by failure to pay the purchase price occurred out of state, where the defendant was located.  While in *Kerry Steel*, the plaintiff, a Michigan steel service center, initially sought out the defendant, an Oklahoma pipe fabricator, the court found that the dispute did not arise from the defendant's contact with the forum despite the fact the contract was arranged by telephone conversations and facsimile transmissions and the purchase orders were sent to Michigan, where the defendant took possession of the coils (the subject of the contract) in Illinois and there was no evidence that the coils were ever in the state of Michigan. Similarly here, the alleged failure to pay occurred in Louisiana – where Defendants are located – and not in Michigan and importantly, none of the work occurred in Michigan.  Thus, despite the purchase orders apparently being sent to Plaintiff's parent company in Michigan, this fact alone is insufficient to satisfy the "arising from" prong of the *Southern Machine* test.

> 3.  *Reasonableness*

Finally, the court must consider whether "the acts of the defendant or consequences caused by the defendant [] have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant

reasonable." *S. Mach. Co.*, 401 F.2d at 381.  This prong of the *Southern Machine* test "correspond[s] with the Supreme Court's requirement that the exercise of personal jurisdiction 'comport[s] with traditional notions of fair play and substantial justice.'" *Procter & Gamble Cellulose Co. v. Viskoza-Loznica*, 33 F. Supp. 2d 644, 661 (W.D. Tenn. 1998) (citing *Reynolds v. International Amateur Athletic Federation,* 23 F.3d 1110, 1117 (6th Cir. 1994)).  In making this determination, a court must consider "the burden on the defendant, the interests of the forum State, [] the plaintiff's interest in obtaining relief … and 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.'" *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  Further, the court must also consider the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Procter & Gamble Cellulose Co.*, 33 F. Supp. 2d at 661 (citing *Asahi Metal Indus. Co.*, 480 U.S. at 113).

Even assuming that Plaintiff's interest in obtaining relief weighs in favor of a finding of reasonableness, the other factors weigh against such a finding. Michigan has little interest in the present dispute, given that the repairs that are the subject of the dispute took place in Alabama and no part of the contract was performed in Michigan.  While Yates South is apparently a Michigan corporation

19

with its headquarters in Michigan, there does not appear to be any dispute that its relevant operations are located in Alabama and the repairs at issue took place at its Alabama facility.  Most of the discovery at issue in this case will necessarily involve the Alabama location and Alabama witnesses.  Accordingly, Michigan's interest is slight under these circumstances.  Moreover, the burden on Defendants is great where they have to litigate in a forum in which they have had little contact while the work that is the subject of the dispute (and where most discovery is likely to be heavily involved), is an entirely different jurisdiction, quite distant from the forum.  Under these circumstances, the court finds that it would be unreasonable to exercise personal jurisdiction over Defendants.

## IV.    CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss based on lack of personal jurisdiction.

**SO ORDERED**.

Date: September 25, 2025              s/F. Kay Behm
                                       F. Kay Behm
                                       United States District Judge